# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CHRIS STREETER,**
        **Plaintiff,**

    **v.**                                      **Case No. 07-C-299**

**CANADIAN PACIFIC RAILROAD,**
**SOO LINE RAILROAD and**
**CP RAIL SYSTEMS,**
        **Defendants.**

---

## DECISION AND ORDER

Plaintiff Chris Streeter brings this action against defendants Canadian Pacific Railroad, Soo Line Railroad and CP Rail Systems (collectively defendant), seeking damages for right-knee injuries he allegedly sustained while fighting a fire on one of defendant's locomotives. Before me now is defendant's motion to exclude the testimony of three of plaintiff's expert witnesses, Dennis Gates, M.D., Rod Durgin, Ph.D., and Malcolm Cohen, Ph. D., pursuant to Federal Rule of Evidence 702.

## I. FEDERAL RULE OF EVIDENCE 702

Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

## II. DISCUSSION

**A.   Dennis Gates, M.D.**

Dr. Gates provides opinions regarding the cause of plaintiff's injuries and his prognosis. As to causation, Gates includes the following sentence in his report: "Based on the records reviewed, all of the treatment and the current condition of the right knee are a direct result of the accident of 6-4-04." Defendant disputes this conclusion and contends that because plaintiff did not complain about his knee until days after the accident and cannot remember precisely how he fell, it is possible that plaintiff did not injure his knee while fighting the fire and that his injuries were the result of "some intervening cause." (Def.'s Br. at 2.)   Defendant argues that Gates's opinion regarding causation is inadmissible because his report does not explain how he arrived at his conclusion.

Plaintiff responds to defendant's motion by pointing out that causation is simply not an issue in this case. From this statement, I infer that plaintiff does not intend to offer Gates's testimony in order to prove causation and that Gates's testimony will be used simply to describe what plaintiff's injuries are. Indeed, it seems doubtful that medical testimony is relevant to causation. Whether plaintiff suffered his injuries during the work-related accident or during some other event does not appear to be an issue that medical expertise could resolve. All of the medical experts in this case agree that plaintiff's injuries could have been caused by the work-related fall, and so there is no issue as to whether it was medically possible for plaintiff to have sustained his injuries during the fall. The only issue is whether, between the time of the accident and his diagnosis, plaintiff was involved in some other, similar incident that could have injured his right knee. This is not an issue

2

on which expert testimony would be helpful, since it turns on plaintiff's credibility and whether there is any other evidence suggesting that plaintiff was involved in another incident. Thus, although Gates can state that he assumes that all of plaintiff's injuries were caused during the work-related accident, he cannot offer an opinion as to causation. The same goes for defendant's medical experts – they cannot opine as to the cause of plaintiff's injuries.

As to prognosis, Gates concludes as follows: "It is more probable than not that the degenerative arthritis in the right knee will progress over time and that at some point in time [plaintiff] may need further surgery, another arthroscope to 'clean out' the knee and at some time in the future a total knee replacement." Again, defendant contends that this opinion is too conclusory to meet Rule 702 requirements. However, it is clear that this conclusion is based on Dr. Gates's medical training and experience along with his examination of plaintiff's medical records. That is, it is clear that Gates is stating that he has seen many patients and that, in his experience, patients with injuries similar to plaintiff's have a reasonable chance of experiencing degenerative arthritis and the need for further surgeries and, possibly, knee replacement. Defendant does not explain what more Dr. Gates needs to say in order to fully explain his conclusion. Indeed, the conclusion of defendant's medical expert, Dr. Haskell, as to prognosis is no more detailed than Gates's. Haskell simply states without explanation that it is his opinion that plaintiff's knee is stable and that he can continue working in the railroad industry. (Report of David S. Haskell, M.D., at 3.) Accordingly, I conclude that Gates's opinion as to prognosis is admissible.

3

**B.	Rod Durgin, Ph.D.**

Rod Durgin is plaintiff's vocational expert who offers testimony about plaintiff's future loss of earning capacity. Durgin offers two scenarios regarding loss of earning capacity, and defendant challenges the admissibility of both scenarios. I consider each scenario in turn.

Durgin's first scenario assumes that plaintiff will be able to find work as a locomotive engineer for the remainder of his working life. Durgin opines that, under this scenario, plaintiff will still experience a loss of earning capacity due to the fact that he is considered "disabled, not severely."[1] (Durgin Updated Report at 2.) Defendant argues that this opinion is not admissible because the medical evidence does not support Durgin's assumption that plaintiff's knee injuries will interfere with his ability to work as an engineer. However, plaintiff's doctors have opined that plaintiff will have difficulty performing certain tasks, such as climbing, jumping, running and other high-impact activities. The parties seem to dispute whether the job of locomotive engineer involves these types of activities. If plaintiff offers evidence at trial indicating that the job does involve these activities, then Durgin's opinions as to plaintiff's loss of earning capacity as an engineer will be admissible.

However, I must add another qualification to the admissibility of this opinion. Durgin's opinion seems to be based, in part, on the assumption that plaintiff will have trouble performing his duties as an engineer because he will have difficulty walking. However, the discovery materials on file do not indicate that any doctor who examined

---

[1] The parties do not explain where the "disabled, not severely" classification comes from, but based on context I assume that this is a classification used by government agencies.

4

plaintiff concluded that his injuries will cause difficulty walking. Instead, as noted, plaintiff's restrictions relate to "high impact" activities, such as running, jumping and climbing. Thus, before I will allow the jury to consider any testimony by Durgin based on the assumption that plaintiff will have difficulty walking, plaintiff must lay the proper foundation by introducing evidence from which a jury could reasonably infer that plaintiff's injuries may cause difficulty walking. Such evidence includes plaintiff's own testimony concerning his ability to walk as well as testimony from medical professionals who are competent to opine that plaintiff's condition might make it difficult for him to walk.

Durgin's second scenario assumes that plaintiff will not be able to find work as a locomotive engineer for the rest of his working life. Durgin concludes that plaintiff is not physically able to perform the duties of a locomotive conductor (a position for which engineers are usually qualified), and so he eliminates employment as a conductor as a possibility. Durgin then calculates plaintiff's future earning capacity based on his status as an average worker with a high school diploma who is "disabled, not severely." Defendant argues that these opinions are inadmissible because there is no evidence that plaintiff will not be able to perform the duties of a conductor. Again, however, if the evidence at trial allows the jury to conclude that the job of conductor involves duties that plaintiff is physically incapable of performing, then this opinion will be admissible. In this regard, I note that plaintiff's orthopedist has opined that plaintiff may not be able to tolerate "conductor type jobs" because such jobs involve activities that cause him intolerable pain. (Mannebach Clinic Note of Nov. 3, 2009.)

5

### C. Malcolm Cohen, Ph. D.

Malcolm Cohen is an economist who will offer testimony concerning the monetary value of plaintiff's loss of earning capacity. Defendant does not argue that Cohen lacks competence to offer this testimony or that his methods are unsound. Rather, defendants contend that his testimony is inadmissible because it depends on the inadmissible testimony of Dr. Gates and Rod Durgin. However, as just explained, Gates and Durgin's testimony will be admissible at trial so long as plaintiff lays the proper foundation, and therefore I cannot exclude Cohen's testimony at this time.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendant's motions in limine concerning Gates, Durgin and Cohen are **GRANTED IN PART** and **DENIED IN PART**. The motions are denied to the extent that they seek the total exclusion of these experts and granted to the extent that I will impose the limitations discussed above on the scope of their testimony.

Dated at Milwaukee, Wisconsin, this 14 day of July, 2010.

/s_____
LYNN ADELMAN
District Judge